IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

DEBORAH V. LONGCRIER, et al,

    **PLAINTIFFS,**            **CIVIL ACTION NO.  08-11-WS-C**

V.

HL-A CO., INC.,

    **DEFENDANT.**

## PLAINTIFFS' BRIEF IN SUPPORT OF
## MOTION TO STRIKE
## EVIDENTIARY SUBMISSION OF DEFENDANT

COME NOW Plaintiffs, by and through counsel of record, and respectfully request that this Court strike portions of the evidentiary submissions by Defendant, specifically declarations of opt-in Plaintiffs and potential class members (DX13), stating as follows:

### I.    INTRODUCTION

Defendant has filed declarations of opt-in Plaintiffs and potential class members that were obtained after Defendant became aware of the impending lawsuit, but before the opt-in Plaintiffs actually had notice of or joined the lawsuit.  The declarations of 19 named and opt-in Plaintiffs illustrate that Defendant went to the Selma plant to obtain statements to preclude potential plaintiffs' involvement in the case before this Court.  Armed with a boiler-plate declaration and a printer, the

1

attorneys for Defendant called employees in individually for what they described as a "survey," without giving the employees any information about their time or pay records, the lawsuit, or their rights under the FLSA.

After requiring employees to sign a declaration helpful to their employer in the one-on-one meetings with Defendant's attorneys, Defendant failed and/or refused to produce those statements to Plaintiffs with Defendant's Initial Disclosures or in response to Request for Production of Documents. Defendant alleged attorney-client and work product privileges for its refusal to produce, only to then submit the documents as evidence in opposition to Plaintiffs' Motion for Conditional Class Certification. Essentially, Defendant has used the attorney-client and work product privileges as both a shield and a sword, in violation of the Federal Rules of Civil Procedure 26 (b). The manner and means by which these declarations were obtained also involves a review of the Alabama Rules of Professional Conduct.

These declarations are problematic on several levels: how they were obtained by Defendant; the fact that they were not produced in response to legitimate discovery requests; and the creation of a conflict of interest for defense counsel.

## II.   FACTUAL BACKGROUND

Upon agreeing to represent the original named Plaintiff in the case, Deborah Longcrier, undersigned counsel contacted defense counsel, Marcel DeBruge, Esq.,

based on previous cases filed against Honda, to determine if counsel represented the Defendant. On October 4, 2007, the undersigned had a conversation with Mr. DeBruge by telephone, generally outlining the case as it was understood at that time. On October 5, 2007, a draft of the complaint to be filed was e-mailed to Mr. DeBruge. (Exhibit 1) [1]. This complaint outlined the causes of action, including the fact that the Opt-In Collective action was being sought.

On October 8, 2007, the undersigned had another phone conference with defense counsel regarding the case. Time and pay records for Longcrier were sent to the undersigned by defense counsel on October 15, 2007. On October 17, the undersigned had another conversation with counsel. During this time period, an associate of Mr. Debruge, Ronald Flowers, became involved. On November 1, 2007, the undersigned sent Mr. Flowers an email (Exhibit 2) requesting Mrs. Longcrier's rate of pay, referencing the time records that had been provided.

On November 12, 2007, the undersigned sent Mr. Flowers another e-mail with an Excel chart outlining the Defendant's FLSA rounding violations. (Exhibit 3). The letter references a phone conversation, as well as sets forth some of the legal arguments Plaintiff intended to use in the case. The letter indicates that the complaint would soon be filed.

---

[1] Plaintiffs have submitted Evidentiary Submissions in support of this motion, not to be confused with Plaintiffs' Evidentiary Submissions in Support of Conditional Class Certification which are also before this Court.

Undersigned counsel engaged in this communication with defense counsel for several reasons. First, the undersigned wanted to review Plaintiff Longcrier's time records to determine if FLSA and rounding violations took place prior to filing a complaint. Second, the undersigned sought facts regarding the case that could affect the case being filed. Finally, the undersigned reached out to Defendant prior to filing in an attempt to resolve the dispute.

As is now clear from the declarations submitted by Defendant in its Response to Plaintiff's Motion for Conditional Class Certification, Defendant used the time between these exchanges to formulate a plan to obtain these declarations that only had to wait for the filing of the complaint. The declarations are all dated within a week of the complaint filing. Defendant's Rule 26(a) Initial Disclosures made no reference to the declarations upon which Defendant now relies (Exhibit 4). Those Initial Disclosures have not been supplemented to this date. After first becoming aware of these declarations through opt-in plaintiffs, Plaintiffs propounded a Second Request for Production of Documents to Defendant on April 30, 2008, requesting:

> Copies of all statements, signed or not, by current or former employees of the Defendant that address any topic in this lawsuit, including any overtime work performed, off the clock, pre-shift, post-shift and/or during lunch. This request specifically covers statements of potential opt-ins, current or former employees that were obtained as a result of individual meetings with Ron Flowers and/or Ashley Hattaway. (Exhibit 5).

4

Exhibit 6 are Defendant's objections to the production of such documents, with an assertion of non-production based upon work product and attorney-client privilege. This indicated to the undersigned that Defendant *did not* intend to utilize the declarations for anything other than the preparation of its case. As such, the undersigned sent Ms. Hattaway, a letter on June 10, 2008 to that effect. (Exhibit 7). Attorney Hattaway's response is included as Exhibit 8, wherein she again stated that the non-production was based upon attorney-client privilege and work product "unless we decide to rely on them and waive the privilege. At present, there is only one Plaintiff in the case, as the case stands now, we do not plan to use them. If the circumstances of the case change and we decide to rely on the statements, we will produce them at that time." At the time of Ms. Hattaway's letter, Plaintiffs had filed consents from all but nine of the 81 opt-in Plaintiffs in this case. Despite the fact that Defendant, by its count has produced 12,371 sheets of paper in the case, it first produced the declarations it prepared in January as an evidentiary submission in opposition to Plaintiffs' Motion for Conditional Class Certification, six months later.

## III.    ARGUMENT

### A.    IMPROPER COMMUNICATION WITH OPT-INS

Plaintiff Longcrier filed this Complaint on January 9, 2008 (Doc. 1). As noted in Plaintiff's evidentiary submissions with this motion, Defendant was aware of the

substance of Plaintiff Longcrier's claims, including the draft of the Complaint, long before January 9, 2008. Six days after the filing of Plaintiff's Complaint, at least two lawyers for Defendant, Ronald Flowers and Ashley Hattaway, interviewed <u>every current employee who was a potential member of the class, individually</u>. As shown by Plaintiff's Evidentiary Submissions (PX9-27), employees were told that the company was "conducting a survey;" and that the declarations would "not be used against the declarant in any way." (PX 9-27, ¶4). Each employee was presented with a form declaration to sign (although changes were made in a few). Specifically, the following took place during the interviews:

Plaintiffs were asked general questions about their pay. They did not understand what they were being asked about. Plaintiffs were not given any information about the Fair Labor Standards Act or any laws protecting them. Plaintiffs did not understand what their rights were at that time. Plaintiffs were not told there was a lawsuit pending regarding pay. Plaintiffs were not told that they had the right to have an attorney present. They were not asked if they were represented by counsel. Plaintiffs were not told they could have a union representative present. After being asked the questions, the counsel for HL-A printed a document from his laptop. Plaintiffs were told to sign the document. Plaintiffs were not given a copy of the document. Plaintiffs felt intimidated in the meeting. In the past, management for

6

HL-A communicated to Plaintiffs that failure to sign company documents was a terminable offense. The attorney for HL-A was insistent that the document be signed. Plaintiffs felt that they had no choice but to sign the document. Plaintiffs did not feel they could leave the meeting or refuse to sign the document without a negative consequence at work. At no time during the meeting were Plaintiffs informed that the declarations would be used against them by HL-A if any of them chose to sue the company or join the lawsuit. After learning of the lawsuit against HL-A for unpaid overtime wages, some 73 of the declarants consented to join in the lawsuit. Subsequent to the filing of these consents, management has made changes to policy regarding working off the clock. (PX 9-27, ¶¶ 4-11).

In *Cox Nuclear Medicine v. Gold Cup Coffee Services, Inc.*, 214 F.R.D. 696 (S.D. Ala. 2003), this Court considered the effect of a defendant's contacting plaintiffs in a class action. Although the case was not specifically relating to an FLSA collective action, the principles regarding a Rule 23 class and communication therewith can easily translate to an FLSA collective.

In *Cox,* this Court stated:

To the extent that the district court is empowered to restrict certain communications in order to prevent frustration of the policies of Rule 23, it may not exercise the power without a *specific record showing* by the moving party of the particular abuses by which it is threatened. In compliance with

7

*Bernard*[2], courts have routinely recognized that the moving party must present an evidentiary showing of actual or threatened abuse by the party sought to be restrained. Two kinds of proof are required. First, the movant must show that a particular form of communication has occurred or threatened to occur. Second, the movant must show that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation. Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with  cooperation with or confidence in class counsel. *Id*. at 697-98. (Internal citations omitted).

In *Cox*, the defendant sent a letter to the plaintiffs in the class informing them of certain facts of the litigation and enclosing a check in the full amount of damages claimed. *Id*. at 698. However, the letter *did not* advise the class members that a lawsuit had been filed on their behalf. *Id*. at 699. The letter and check reflected that cashing or other endorsement of the check constituted a full release of liability. *Id*. at 698.

In the case before this Court, Plaintiffs have shown actual communication, rather than threatened, because the communication has already occurred, as evidenced by the declarations themselves. Second, Plaintiffs have shown this communication is abusive and threatens the instant litigation. (PX 9-27). The actions of Defendant are exactly those contemplated in *Cox*: coercing prospective members to attempt to

---

2*Gulf Oil Co. V. Bernard*, 452 U.S. 89, 101, 68 L. Ed. 2d 693, 101 S. Ct. 2193 (1981).

exclude themselves, whether voluntarily or not, from litigation, and communications that contain false, misleading and/or confusing statements.

Defendant cannot avoid its original purpose in obtaining the declarations or its use of them in this matter where in its Opposition to Plaintiff's Motion for Conditional Class Certification where it references the 245 declarations of associates it submits, and makes this statement:   "The generalized allegations of many of the associates who submitted declarations for Plaintiffs are contradicted by their sworn declarations.(Defendant's Brief, pp. 16, 17, n. 14).

Defendant may argue that it had to see the declarations submitted before it could determine if it would use the ones it had previously obtained. Aside from the fact that Defendant's declarations were obtained without providing any of the delcarants any information about Plaintiff's claims in this action; or documents to review to determine if there were violations, such as time and pay records; or provide the delcarants the opportunity to determine their rights under the law, and as such are useless; submission of the declarations for the purpose for which Defendant has applied them in its opposition is improper.

Plaintiffs do not contend that a Defendant does not have the right to talk with its employees.  Plaintiffs do not contend that a defendant does not have the right to investigate the facts of a case with its employer.  Had that been done in this case, this

9

motion would not have been filed. However, what actually occurred is far from an investigation. As noted in Plaintiffs' declarations (PX9-27), they were called in one at a time to meet with the company's lawyer who said he was conducting a "survey" even though the lawsuit had been filed. There was no survey involved. The meetings were held for the purpose  of obtaining sworn testimony prior to the employees learning of the lawsuit. The declarations were obtained for the purpose for which they were used, to interfere with the legal rights of the declarant, without providing the declarant information from which reasoned testimony could be obtained.

Typically, an attorney interviewing potential opt-in class members makes full disclosure of his/her position and has the employee sign a "Johnny's Poultry" disclosure, much in the nature of Plaintiff's Exhibit 28.   Such a disclosure ensures that the employee knows that he/he has no obligation to even talk with the interviewer. Based on the face of the declarations produced by Defendant, such disclosures were not made to the declarants, and based on Plaintiffs' declarations (PX9-27), such disclosures were not made orally.   Each of the plaintiffs submitting declarations testified to feeling coerced into signing the declaration that Defendant has produced. Defendant did not conduct a legitimate investigation, but rather a planned ambush that threatened the collective action process in this case. The ambush was planned before the case was filed with only waiting on the "go ahead" for the complaint to be filed.

10

How else could two lawyers clear their schedule to interview 245 people in two days within one week? The very fact that Defendant was able to obtain declarations from 245 employees out of its 253 then current hourly employees (Defendant's Brief in Opposition to Plaintiffs' Motion for Conditional Class Certification, p. 4) questions the voluntariness of the declarations. The fact that 73 of those individuals have since opted into this case undermines any claim by the Defendant of a non-coercive, voluntary statement.[3]  It is unquestioned that Defendant hid from each declarant the fact that this current lawsuit had been filed, and what claims were being asserted in such lawsuit. (PX9-27).

In *Bublitz v. E.I. duPont*, 196 F.R.D. 545, 548 (S.D. Iowa 2000), the court held "where the defendant is the current employer of putative class members who are at-will employees, the risk of coercion is particularly high; indeed, there may in fact be some inherent coercion in such a situation." The *Bublitz* court cited *Kliner v. First National Bank of Atlanta*, 751 F.2d 1193, 1202-1203 (11th Cir. 1985):

> A unilateral communications scheme, moreover, is rife with potential for coercion. If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.

---

3
While arguing the declarations show the declarants did not suffer FLSA violations there is no showing that they were provided anything upon which to base such an opinion and it should be noted that Defendant was unable to obtain a single declaration from a <u>former</u> employee at the time (1/08) despite the claimed <u>voluntary</u> nature of these declarations.

...In view of the tension between the preference for class adjudication and the individual autonomy afforded by exclusion, it is critical that the class receive accurate and impartial information regarding the status, purposes and effects of the class action.

...Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable.

...Obstructed the district court in the discharge of its duty to protect both the absent class and the integrity of the judicial process by monitoring the actions before it.

"The 'best practicable notice' envisioned by the rule is notice that conveys objective, neutral information about the nature of the claim and the consequence of proceeding as a class." *Kliner*, 751 F.2d at 1203, citing *In re Nissan Motor Corporation Antitrust Litigation*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). In the instant case, Defendant did not afford any consideration to potential class members for payment of their potential claims; rather, Defendant manipulated the putative captive employees/class members by claiming to be conducting a survey, and requiring the signing of declarations that it intended to use to preclude each declarant's involvement or recovery in the collective action. These potential class members did not receive the "impartial information" as proposed by the Eleventh Circuit in *Kliner* prior to signing the documents.

In *Bower v. The Bunker Hill Company*, 689 F. Supp. 1032 (E.D. Wa.

12

1985)[4], the court considered whether or not a defendant could contact class members outside the presence of plaintiffs' counsel.  The court noted:

> The defendant's articulated reason for contacting class members here is to obtain information to aid in the preparation of its own case.  As was noted by the court in *Resnick*[5], such a need is present in every case and can be readily filled by the use of the discovery process. Moreover, class members gain no benefit from such contact.  Quite the contrary, the imbalance in knowledge and skill which exists between class members and defense counsel presents an extreme potential for prejudice to class members' rights.  *Id.* at 1034.

To the extent Defendant claims it was only seeking information to help it in its investigation or discovery,  there would be no need to take boiler-plate declarations that it drafted to its benefit to be signed by potential plaintiffs in an investigation.   Any questions defendant had of the opt-ins could have been obtained in discovery, a non-coercive situation.

## B.   VIOLATION OF DISCOVERY RULES

Defendant's failure to produce the declarations of the opt-in Plaintiffs and the other declarants violates the Federal Rules of Civil Procedure, specifically Rule 26(b).

"A litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking

---

4*Bower* is cited by this court in *Cox Nuclear*, 214 F.R.D. at 697.

5*Resnick v. American Dental Ass'n*, 95 F.R.D. 372 (N.D. Ill. 1982).

the privilege to prevent an opponent from challenging the assertion." *Chao v. Tyson Foods, Inc.*, 2008 U.S. Dist. LEXIS 29950, 78-79 (N.D. Ala., January 22, 2008), citing *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998); *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 410-20 (D. Del., 1992) (finding plaintiff could not rely on contents of documents protected by work product privilege to establish any element of its claim against defendant). This was exactly the tactic used by Defendant in withholding the declarations only to use them in its Response.

After obtaining the declarations within the first week of this lawsuit, Defendant filed its Initial Disclosures on May 13, 2008, without any reference to the declarations or even a listing of the declarants and the subject matters of their expected testimony. The undersigned became aware of the declarations through communications with opt-in Plaintiffs and filed a formal request for the statements on April 13, 2008 (Exhibit 5). Defendant refused to produce the statements on June 2, 2008, taking the maximum length of time allowed by the rules to respond. In asserting work product and attorney-client privileges, Defendant failed to comply with this Court's Scheduling Order of May 13, 2008 (Doc. 19) at item 11(d) requiring "at a minimum" that the privilege log comply with pages 8-11 of the Introduction to Civil Discovery Practice in the Southern District of Alabama.

14

Defendant failed to comply with items 2(a) (Exhibit 6). To the extent that Defendant believed it could not comply with this rule, it had a duty under Subsection 6 (page 10 of the Introduction) to produce the documents *in camera* to the Court by no later than June 2, 2008, (the date Defendant's responses were due to Plaintiff's discovery). Defendant has to this day, failed to comply with the requirements of this Court's Scheduling Order. Because Defendant withheld the documents as attorney-client and work-product privilege during discovery, they should be struck by this Court pursuant to F.R.C.P. 37(c)(1), which states:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, *or on a motion* any witness or information not so disclosed. (Emphasis added).

Defense counsel's claim in it's letter of June 11, 2008 (Exhibit A) that because this was a single Plaintiff case at the time, they did not plan to use the declarations is disingenuous. Of course, they planned to use them as soon as they started collecting them in January. What was the purpose of obtaining the declarations if they were not going to use them? This exercise had to be at great cost to Defendant. The fact that declarations have been submitted by Defendant in opposition to Plaintiff's Motion for Conditional Class Certification for both existing named Plaintiffs, opt-in Plaintiffs, and potential opt-in Plaintiffs shows

15

the fallacy of that claim. On June 16, 2008, Plaintiff filed a Motion to Amend and Restate Complaint by adding additional named Plaintiffs. This Court granted Plaintiff's Motion on June 30, 2008, although Plaintiff had to move for a late filing of the amended complaint which took place July 18, 2008 (Doc. 37). At no point has Defendant ever withdrawn its formal claim of work product and attorney-client privilege.[6] Even if Defendant initially intended not to use the documents and believed they were protected based on privilege, Defendant had a duty to supplement is responses and Initial Disclosures once it became aware that it intended to use the statements. The failure to disclose is far from "harmless," since Defendant argues the declarations should be considered by this Court to defeat Plaintiffs' Motion for Conditional Class Certification.

Defendant's claims of work product and attorney client privilege in refusing to produce the declarations when requested by Plaintiffs were not well taken. Aside from the fact that Defendant obtained the declarations with the purpose of using them to deprive putative class members of their legal rights without so informing them, defense counsel certainly never had any type of an attorney client relationship with the putative class. Since this action arises under federal law,

---

6All privileges have now been waived since Defendant has relied on the declarations. See §26.70(6)© of Moore's Federal Practice ("A party also impliedly waives work product protection if it places the substance of the documents for which the protection is claimed at issue. Similarly, if a party uses the substance of the documents in testimony any work product protection is waived.")

16

Rule 501 of the Federal Rules of Evidence requires that privilege be determined

by federal common law, as noted by *Lawson v. McDonough*, 2007 U.S. Dist.

LEXIS 41935, *3, *4 (N.D. Fla., June 7, 2007).

> The attorney-client privilege is recognized by federal common
> law. *Upjohn Co. V. United States*, 449 U.S. 383, 389, 101 S.Ct.
> 677, 66 L.Ed.2d 584 (1981). The elements of attorney-client
> privilege are: (1) where legal advice of any kind is sought; (2)
> from a professional [*4] legal advisor; (3) the communications
> relate to this purpose; (4) made in confidence; (5) by the client; (6)
> are at the client's instance protected; (7) from disclosure by
> himself or the legal advisor; (8) unless the protection is waived.

Defense counsel identified themselves as counsel for HL-A at the time they

obtained the declarations for the putative class members by claiming they were

conducting a survey. Each element of the attorney-client privilege is missing and

could not possibly be properly asserted by Defendant as a basis for withholding

these declarations from class counsel. Also, with work product, Rule 26(b)(3) of

the Federal Rules of Civil Procedure sets forth that privilege. While Defendant

will argue that the declarations were obtained in anticipation of litigation, that is

not a valid claim where they were obtained with the clear intent of use to preclude

claims of putative class members. It is one thing to obtain statements or affidavits

from fact witnesses to assist in claims of a named party, it is quite another to

obtain sworn testimony (declarations) of potential plaintiffs in a case where it is

against their best interest to sign such a declaration, but they are never informed

of such by counsel for Defendant. To the extent Defendant claims that its mental impressions are contained in the boiler-plate declaration that it had each of the declarants sign, so be it. That may make the claim of work product more arguable, but runs afoul of defense counsel's duties when dealing with an unrepresented party, as discussed more fully in sub-section C.

Defendant should be precluded from using the evidence that it withheld to defeat Plaintiff's Motion for Conditional Class Certification. *See Chao v. Tyson Foods, Inc.*, 2008 U.S. Dist. LEXIS 29950, *78-79 (N.D. Ala., January 22, 2008) (Striking declaration that was not produced during discovery).

### C.    RULES OF PROFESSIONAL CONDUCT

The declarations submitted by Plaintiffs regarding the tactics used by Defendant to obtain Defendant's declarations call into question the Alabama Rules of Professional Conduct. Each Plaintiff has submitted a declaration, affirming: "I was told by the attorney for HL-A, Ron Flowers, that HL-A was conducting a survey..." (PX 9-27, § 4).

Rule 4.1 dealing with Truthfulness in Statements to Others states:

> In the course of representing a client, a lawyer shall not knowingly:
> (a) Make a false statement of material fact or law to a third person;...

Rule 4.3, Dealing with Unrepresented Person, states:
> In dealing on behalf of a client with a person who is not represented
> by counsel, a lawyer shall not state or imply that the lawyer is

18

disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

As noted in the comments to Rule 4.3, "An unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law, even when the lawyer represents a client." Although counsel for Defendant informed the potential Plaintiffs that they were counsel for Defendant, they represented that their purpose for meeting with the individuals related to this lawsuit, and for obtaining declarations to be used against each person who might later join the lawsuit was for a "survey."

Rule 4.4, Respect for Rights of Third Persons, states:

In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay or burden a third person, or *use methods of obtaining evidence that violate the legal rights of such person.* (Emphasis added.)

Defendant argues that the 245 declarations indicate that Defendant paid associates for all overtime worked. (Defendant's Brief in Opposition to Conditional Class Certification, p. 16). Defendant argues contradictions between declarations submitted by Plaintiffs in support of their Class Motion versus

declarations submitted by Defendant. (Defendant's Brief, p. 17; n 14).[7]

Had Defendant stuck to its original stated purpose of not using the declarations it obtained, this motion would not have been filed. It is the use of the declarations that has caused the instant motion. The declarations are being used to attempt to deprive current opt-in Plaintiffs of their unpaid overtime by showing contradictions in testimony, and to deprive putative class members of their potential entitlement to overtime. As such, the declarations of each of these unrepresented individuals were obtained for the purpose of violating the rights of such persons.

## D.    CONFLICT OF INTEREST IF STATEMENTS CONSIDERED

Rule 3.7 of the Alabama Rules of Professional Conduct states that "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness."

If these statements are considered by this Court and/or can be used by Defendant subsequently in this litigation, defense counsel will necessarily become witnesses in the case. The undersigned will be required to depose all of the attorneys representing Defendant to determine the method, means and motivation regarding obtaining the declarations. To the extent that this Court considers the

---

7Some of the individuals referenced by Defendant in the footnote have explained why Defendant was able to obtain their involuntary, uninformed testimony in January. (Exhibit 6, 7).

declarations, Plaintiffs will need to treat defense counsel as witnesses, likely calling them to the stand at trial, which would have the potential effect of disqualification.

## IV. CONCLUSION

Defendant has submitted Declarations from 73 of the named and opt-in Plaintiffs in this case regarding the meeting they were forced to attend with defense counsel. Defendant provided "fill-in-the-blank" declarations for current, requiring employees to sign in the hopes that their claims as part of the opt-in class would be negated. Defendant obtained these declarations from current employees through defense counsel. The obvious intimidation effect of an employee being called to a meeting with the company's lawyers and asked to provide sworn testimony for use in a case of which they were likely unaware is clear. While a Defendant may have a right to interview its employees about the facts, Defendant's actions here go too far, obtaining sworn testimony from potential opt-in members prior to this Court making a decision regarding issuing notice to such employees.[8] The manner and means by which these declarations

---

8

"Moreover, as the Supreme Court has recognized, fear of employer reprisals will frequently chill employees' willingness to challenge employers' violations of their rights." *Does I-XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1073 (9th Cir. 2000) (citing *Mitchell v. Robert DiMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). See *Bontempo v. Metro Networks, Inc.*, 2002 U.S. Dist. LEXIS 11810 at [*6] (N.D. Ill. 2002), the Court granted plaintiff's motion for class certification and the Court ordered the Defendant "to refrain from any and all forms of

21

were obtained call into question the voluntariness of such documents, as well as their accuracy.

Such conduct needs to be quashed, in this case and in other opt-in collective actions. If lawyers representing companies are allowed to coerce their employees into signing documents at the beginning of collective actions that limit their claims, particularly without explaining their legal rights or informing them of the case, FLSA collective actions will be affected as a whole.

Respectfully submitted,

/s/ David R. Arendall

David R. Arendall
Counsel for Plaintiff

OF COUNSEL:
ARENDALL & ASSOCIATES
2018 Morris Avenue, Third Floor
Birmingham, AL 35203
205.252.1550 – Office
205.252.1556 – Facsimile

communications with current and prospective class members concerning the merits and issues of their FLSA claims." See also *Haffer v. Temple University of Commonwealth System of Higher Ed.*, 115 F.R.D. 506, 514 (E.D. Pa. 1987) (order that prohibited communications by Defendant to potential class members did not violate First Amendment).

## CERTIFICATE OF SERVICE

*august 12, 2008*

I hereby certify that on ~~August 14, 2008~~, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

Marcel Debruge, Esq.
Ashley Hattaway, Esq.
Ronald Flowers, Esq.
Austin Smith, Esq.

/s/ David R. Arendall

Of Counsel

23