IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **DEBORAH V. LONGCRIER,** *et al.*, | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| v. | )    **CIVIL ACTION 08-0011-WS-C** |
| | ) |
| **HL-A CO., INC.,** | ) |
| | ) |
|     **Defendant.** | ) |

**ORDER**

This matter comes before the Court on Defendant's Motion to Reconsider Order Striking Declarations (doc. 64). The Motion has been briefed and is ripe for disposition.[1]

**I.    Background.**

On December 9, 2008, the undersigned entered a lengthy Order (doc. 63) addressing a variety of pending motions filed by both sides in this putative FLSA opt-in collective action brought pursuant to 29 U.S.C. § 216(b). Among other things, that December 9 Order conditionally certified an opt-in class consisting of all current and former hourly employees of defendant, HL-A Company, Inc. ("HL-A"), whom defendant employed at any time between January 9, 2005 and January 9, 2008.

The December 9 Order also considered plaintiffs' objections to some 245 declarations (the "Declarations") that defendant obtained from its employees within days after the Complaint was filed. These nearly-identical Declarations include statements from 96.8% of defendant's 253 hourly employees that, with a few minor exceptions, they have been paid for all of their time worked, they do not perform work during their breaks, and they do not perform any work tasks

---

[1]  Defendant has requested oral argument. Pursuant to Local Rule 7.3, the Court in its discretion may rule on any motion without oral argument. After careful consideration of the parties' extensive written submissions (totaling more than 30 pages of briefing on the Motion to Reconsider, as well as 70 pages of briefing on the underlying Motion to Strike), the undersigned is of the opinion that oral argument would not be of substantial assistance in resolving the straightforward, narrow legal issues presented. Accordingly, the request for oral argument is **denied**.

until their shift begins.  If admissible, such Declarations could be crippling to the ability of these putative opt-in plaintiffs to join in this action and to establish viable FLSA claims for unpaid overtime compensation of the type identified in the Complaint, inasmuch as each is tantamount to a disclaimer that any overtime violations occurred.

The problem with these Declarations was not their content, but rather the circumstances under which they were procured by HL-A.  Unrebutted evidence presented by plaintiffs in connection with their Motion to Strike and/or Motion for Protective Order (doc. 52) established the following critical facts: (1) HL-A's attorneys obtained these Declarations in a coordinated blitz of declaration-gathering immediately after the filing of the Complaint (doc. 1), which on its face invoked the opt-in FLSA collective action provisions of 29 U.S.C. § 216(b); (2) the Declarations were obtained during work hours with each employee being called individually into a meeting with HL-A's attorney(s), who asked them questions and instructed them to sign a statement; (3) in collecting the Declarations, HL-A was proceeding in anticipation of, and with actual knowledge of, the pendency of this litigation; (4) the Declarations specifically addressed the very FLSA allegations identified in the Complaint; (5) despite the foregoing, HL-A and its attorneys failed to apprise the declarants of the pendency of the Complaint, their potential opt-in rights under the Complaint, HL-A's designs to use their Declarations to foreclose declarants' participation in this lawsuit as opt-in plaintiffs, or the potentially deleterious effect of their cooperation on declarants' rights under the FLSA; (6) in lieu of the truth, HL-A's attorneys explained to declarants that the purpose of the meeting was that the company "was conducting a survey"; and (7) HL-A has aggressively sought to use the Declarations against the declarants by filing all of them in this case as exhibits in an unsuccessful bid to defeat conditional class certification.

Based on these unrefuted facts and circumstances, the arguments of counsel, and its own research, the Court concluded that defendant had obtained the Declarations improperly and in bad faith, and that defendant's communications to its employees were abusive, misleading and coercive, and threatened the proper functioning of the litigation.  On that basis, the Court invoked its inherent powers to sanction errant litigants by striking the Declarations and barring defendant from utilizing them for any purpose in this litigation.  This decision was undertaken neither lightly nor on a whim, but was carefully researched, analyzed and explained over the

span of 9 pages in the December 9 Order.  Defendant now seeks reconsideration.

## II.     Analysis.

### A.     *Legal Standard for Motion to Reconsider.*

As an initial matter, defendant's 22-page brief in support of its Motion to Reconsider eschews any citation to the Federal Rules of Civil Procedure, and devotes minimal attention to the applicable legal standard for reconsideration of a federal court's decision.  Nonetheless, it is apparent that defendant would travel under Rules 59(e) and/or 60(b), Fed.R.Civ.P., which authorize district courts to grant relief from orders or judgments under certain narrow specified circumstances.  Defendant's Motion faces daunting threshold criteria.  Indeed, "[i]n the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly."  *Gougler v. Sirius Products, Inc.*, 370 F. Supp.2d 1185, 1189 (S.D. Ala. 2005); *see also United States v. Bailey*, 288 F. Supp.2d 1261, 1267 (M.D. Fla. 2003); *Spellman v. Haley*, 2004 WL 866837, *2 (M.D. Ala. Feb. 22, 2002) ("litigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling").[2]  A motion to reconsider is not a vehicle "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *Exxon Shipping Co. v. Baker*, --- U.S. ----, 128 S.Ct. 2605, 2617 n.5, 171 L.Ed.2d 570 (2008) (citation omitted).[3]  The

---

[2]     The pragmatic policy considerations underlying these principles are that "if every question once considered and decided remained open for reexamination in subsequent proceedings in that same case, [a district] court could not efficiently or satisfactorily perform its duties."  *Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 750 (5th Cir. 1985).  Imagine how a district court's workload would multiply if it was obliged to rule twice on the same arguments by the same party upon request.  It is thus improper to utilize a motion to reconsider to ask a district court to rethink a decision once made, merely because a litigant disagrees.

[3]     *See also Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (noting that litigant "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that could have been raised" previously); *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (cautioning against use of motion to reconsider to afford a litigant "two bites at the apple"); *Gipson v. Mattox*, 511 F. Supp.2d 1182, 1185 (S.D. Ala. 2007) ("Nor may a party properly utilize a motion to reconsider as a vehicle for rehashing arguments considered and rejected in the underlying order."); *Gougler*, 370 F. Supp.2d at 1189 n.1 ("motions to reconsider are not a platform to relitigate arguments previously considered and rejected").

Eleventh Circuit has also stated that "a motion to reconsider should not be used by the parties to set forth new theories of law." *Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997); *see also Russell Petroleum Corp. v. Environ Products, Inc.*, 333 F. Supp.2d 1228, 1234 (M.D. Ala. 2004) (relying on *Mays* to deny motion to reconsider where movant advanced new arguments). Furthermore, the Eleventh Circuit has recently reaffirmed that "[t]he only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact. A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (internal citations and quotations omitted).

Simply put, "[a] party may move for reconsideration only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Vidinliev v. Carey Int'l, Inc.*, 2008 WL 5459335, *1 (N.D. Ga. Dec. 15, 2008) (citations and internal quotation marks omitted); *see also LeFrere v. Baldwin County Comm'n*, 2008 WL 5071892, *1 (S.D. Ala. Nov. 25, 2008) (similar). Here, defendant justifies its Motion to Reconsider via nothing more than a passing reference to the "manifest error" standard.

### B.   *Defendant's Asserted Grounds for Reconsideration.*

In its Motion, HL-A articulates no fewer than five grounds for reconsideration of the portion of the December 9, 2008 Order precluding defendant from utilizing the Declarations for any purpose in this litigation. The Court will address each of them sequentially.

Defendant's leading argument is that "contrary to controlling (but uncited) precedent, this Court analyzed HL-A's conduct as if plaintiff's complaint at the time was a certified class action, rather than a single-plaintiff overtime case." (Doc. 65, at 4.) The crux of this contention is that the December 9 Order is manifestly erroneous because the Court failed to appreciate that this case is proceeding not as a Rule 23 class action, but as a § 216(b) FLSA opt-in collective action. Defendant's stance grossly and inexplicably mischaracterizes the December 9 Order. This Court is and was at all times fully aware that its ruling was being made in the context of a FLSA action in which opt-in collective action status is being sought, rather than a traditional Rule 23 class action. Indeed, the December 9 Order devoted a full page to explaining key distinctions between the two. (Doc. 63, at 17-18.) Moreover, the portion of the Order addressing the Declarations is

peppered with references to "prospective opt-in plaintiffs," "putative opt-in plaintiffs," "§ 216(b) opt-in collective action status" and so on. (*Id.* at 7-17.) The entire first paragraph of the Court's analysis of this question established the proposition that "a defendant in a § 216(b) action is not categorically forbidden from communicating with prospective opt-in plaintiffs" (*id.* at 9), leaving absolutely no reasonable basis for asserting that the December 9 Order proceeded from a mistaken belief that this is a Rule 23 case to which Rule 23 standards apply. In light of the clarity of the ruling, defendant's suggestion that the December 9 Order was the product of a failure by this Court to grasp the § 216(b) nature of this action is both ill-advised and irreconcilable with the plain language of the Order.[4]

---

[4] In all candor, the Court has struggled to understand how defendant's capable attorneys could have interposed such an objection in good faith. Extending the benefit of the doubt to counsel, and reading their brief charitably, the Court perceives two possible bases for this argument. The first is that the relevant section of the December 9 Order cites both Rule 23 and § 216(b) caselaw. But this is neither error nor a colorable basis for a Motion to Reconsider. The Order was careful to recognize the two types of cases, and was reciting Rule 23 decisions only by analogy, given the relatively sparse authorities on the subject of improper communications between an employer and prospective opt-in plaintiffs in an FLSA action under § 216(b). Is the analogy perfect? Of course not, but it is nonetheless an analogy the Court deemed helpful in analyzing the propriety of counsel's communications. Close examination of defendant's underlying brief (doc. 57) reveals that HL-A likewise relied on Rule 23 authorities by analogy in various places, thereby engaging in the same activity that it now decries as manifest error by this Court. That the Court looked to Rule 23 authorities for guidance is not indicative of a lack of comprehension that Rule 23 and § 216(b) actions are different in many respects. The December 9 Order explicitly noted and catalogued some of those differences. Nor does the mere citation of Rule 23 authorities alongside § 216(b) authorities for this specific purpose run afoul of the Eleventh Circuit's *Cameron-Grant* decision. Furthermore, the reasoning and conclusion of the December 9 Order would apply with equal force and would be unchanged even if all of the Rule 23 authorities were stripped away, leaving only the § 216(b) caselaw cited in the decision. This is not manifest error.
   Second, defendant ascribes confusion to the Court's use of particular terminology. The December 9 Order does employ the terms "class action" and "class member" from time to time. But so has the Eleventh Circuit. *See, e.g., Morgan v. Family Dollar Stores, Inc.*, --- F.3d ----, 2008 WL 5220263, *16 (11th Cir. Dec. 16, 2008) (in § 216(b) context, "[a]fter being given notice, putative class members have the opportunity to opt-in"); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (in § 216(b) context, "at the initial stage the district court's decision to certify a class is based primarily on pleadings and affidavits" and "the FLSA does not require potential class members to hold identical positions"); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001) (explaining that to create "opt-in class" under § 216(b),

Second, HL-A directly challenges the authority of this District Court to regulate or limit communications with putative opt-in plaintiffs in this case. In HL-A's words, "the Court lacks the discretion or authority to sanction HL-A's employer communications that do not mischaracterize, provide misleading information about, or even mention the pending litigation." (Doc. 65.)  In so arguing, defendant contradicts itself.  Indeed, HL-A would now abandon the very legal standard that it urged the Court to apply in briefing the underlying Motion to Strike. In its Opposition to Plaintiffs' Motion to Strike (doc. 57), HL-A originally argued that this Court could limit its communications with "putative class members" as long as it found (a) that a particular form of communication has occurred or is threatened to occur, and (b) that the particular form of communication was abusive in that it threatens the proper functioning of the litigation. (Doc. 57, at 12-13.)  It is improper for a litigant to use a Motion to Reconsider to change its mind about the legal standard that it previously endorsed.  It is likewise improper for a litigant to use a Motion to Reconsider to assert for the first time a previously available argument. Furthermore, HL-A ignores the fact that this Court predicated its limitation of HL-A's communications on an express finding that HL-A had engaged in misleading communications with putative class members.  There is abundant and applicable authority, cited both in the December 9 Order and HL-A's own underlying brief (doc. 57), for the proposition that judicial limitation of an employer's communications is warranted and permissible in such circumstances. Even if such authority did not exist, despite submitting more than 50 pages of briefing on the

---

plaintiffs need only show that their positions are similar "to the positions held by putative class members") (citation omitted).  Surely defendant does not mean to suggest that by allowing "class" terminology to infiltrate its § 216(b) rulings, the Court of Appeals fails to grasp the difference between Rule 23 actions and those brought under § 216(b).  Yet that is precisely the criticism HL-A levels at the December 9 Order.  And HL-A's condemnation of the Court's use of the term "putative" to describe potential opt-in plaintiffs is simply frivolous.  The December 9 Order correctly used the term "putative" in its meaning "thought, assumed or alleged to be such or to exist," as defined by *Merriam-Webster's Dictionary of Law*.  The Eleventh Circuit has, in *Morgan*, *Hipp* and other decisions, used the phrase "putative class members" in precisely the same context that this Court did.  And HL-A's own Opposition Brief (doc. 57) concerning the underlying Motion to Strike used the terms "putative class" or "putative class members" – the very terms that HL-A now insists are indicative of confusion by this Court as to what kind of case this is – no fewer than 11 times!  To the extent, then, that HL-A's objection is rooted in semantics exercises, it veers perilously close to bad faith.

underlying Motion to Strike as well as its present Motion to Reconsider, HL-A has failed to identify a single case from any jurisdiction which states that district courts lack the power to limit abusive communications by employers to prospective opt-in plaintiffs in § 216(b) cases. This ground for reconsideration is meritless.[5]

---

[5] Defendant's case-based arguments on this point are equally unavailing. In particular, HL-A states in conclusory fashion that the Eleventh Circuit's decisions in *Morgan* and *Cameron-Grant* render the pendency of this § 216(b) opt-in proceeding "irrelevant to HL-A's interviewing its associates and taking statements regarding its time clock and payroll practices." (Doc. 65, at 8.) HL-A does not specify what aspect of *Morgan* and *Cameron-Grant* warrants such a remarkable conclusion. Certainly, neither of those decisions purports to forbid district courts from limiting communications between parties and putative class members in FLSA opt-in collective action proceedings. *Morgan* and *Cameron-Grant* do not declare open season for employers looking to trick prospective § 216(b) opt-in plaintiffs into signing damaging statements. Perhaps HL-A means to fall back on the distinction, recognized in *Morgan* and *Cameron-Grant* (and in this Court's December 9 Order), between Rule 23 and § 216(b) proceedings. But so what? To say that Rule 23 class actions and § 216(b) actions are different is not to conclude that employers may resort with impunity to dishonest, misleading and abusive tactics to obtain declarations from their employees in § 216(b) actions, with courts being powerless to remedy the situation. And many cases have expressly recognized district courts' discretion to regulate such communications in the § 216(b) context. *See, e.g., Kerce v. West Telemarketing Corp.*, 575 F. Supp.2d 1354, 1366 (S.D. Ga. 2008) (recognizing that "in appropriate circumstances, the Court may limit the parties' communications with putative class members" prior to decision on conditional certification question in a § 216(b) action); *Maddox v. Knowledge Learning Corp.*, 499 F. Supp.2d 1338, 1342-43 (N.D. Ga. 2007) (collecting cases for proposition that in § 216(b) actions, lower courts may "rely[] upon their broad case management discretion to generally allow pre-notice communications while actively limiting misleading statements in such communications"); *Jones v. Casey's General Stores*, 517 F. Supp.2d 1080, 1088 (S.D. Iowa 2007) (similar); *Belt v. Emcare, Inc.*, 299 F. Supp.2d 664, 667 (E.D. Tex. 2003) (similar). Likewise, HL-A's attempts to distinguish *Maddox*, *Jones* and *Belt* on their facts in no way vitiate the legal standard under which those decisions were made, namely, that district courts do possess discretion actively to limit misleading communications with putative opt-in plaintiffs. With respect to *Sjoblom v. Charter Communications, LLC*, 2007 WL 5314916 (W.D. Wis. Dec. 26, 2007), in which a district court granted relief to plaintiffs in a similar fact situation to that presented here (namely, a blitz campaign of affidavit-gathering under false pretenses), HL-A states in conclusory fashion that *Sjoblom* "is plainly inconsistent with *Cameron-Grant*." (Doc. 65, at 10 n.11.) The Court rejects defendant's nonsensical reading of *Cameron-Grant* (which, while never explicitly stated by HL-A, is apparently that because Rule 23 and § 216(b) cases are different, district courts are precluded from restricting abusive communications in § 216(b) cases) as utterly untethered from the text of that opinion and devoid of legal or common-sense support.

As its third basis for seeking reconsideration, HL-A invokes the specter of "some sort of civil *Miranda* warning" being mandated if the December 9 Order remains in effect. (Doc. 65, at 12.) Indeed, HL-A traces out cataclysmic, wide-ranging implications of the December 9 Order as reaching "employers investigating issues and/or allegations in almost any internal matter or complaint" and mandating that a script be read to each employee as a prerequisite to employer queries. (*Id.* at 12-13.) Such fears are wholly unjustified. Nothing in the December 9 Order purported to set forth a new disclosure requirement of general applicability in every employer interview of its employees in every imaginable context. To the contrary, this Court's finding of abusive communications by HL-A was highly fact-specific, rooted solely in the surrounding facts and circumstances of this case. That ruling cannot logically be extrapolated or abstracted to other fact patterns or contexts, nor can it reasonably be read as imposing an across-the-board requirement on employers. The Court rejects HL-A's efforts to transmogrify the December 9 Order into something that it plainly is not.[6]

HL-A's fourth stated basis for reconsideration is an unapologetic rehash of its position (fully argued and litigated previously) that its conduct was not misleading, deceptive, in bad faith, or inappropriate. The Court will not indulge defendant's procedurally improper request for a "do-over" in its Motion to Reconsider of arguments that were fully considered and rejected in the December 9 Order. To the extent that HL-A now wishes to supplement its lengthy arguments in previous briefing with new reasons why it thinks its conduct was not misleading, such efforts are likewise improper in the Rule 59(e) or 60(b) contexts. *See, e.g., Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (noting that litigant "cannot use a Rule 59(e) motion to relitigate old matters, raise argument or present evidence that

---

[6] In a footnote, HL-A frets that the December 9 Order "will unnecessarily create obstacles which employers must overcome in communicating with their employees." (Doc. 65, at 12 n.14.) If, by "obstacles," HL-A means that the December 9 Order applies long-established principles that employers cannot communicate with their employees in an abusive, misleading and deceptive fashion in § 216(b) actions, the Court does not disagree. But nothing in the December 9 Order creates new law or sets forth a new standard for employer behavior. Defendant's argument overlooks the wealth of precedent recognizing the impropriety of similarly abusive communications, including those authorities cited in the December 9 Order and in defendant's own brief on the underlying Motion to Strike.

could have been raised prior to the entry of judgment"); *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (cautioning against use of motion to reconsider to afford a litigant "two bites at the apple"); *Gipson v. Mattox*, 511 F. Supp.2d 1182, 1185 (S.D. Ala. 2007) ("Nor may a party properly utilize a motion to reconsider as a vehicle for rehashing arguments considered and rejected in the underlying order.").[7]

Notwithstanding the foregoing, and at the risk of redundancy, the Court will summarize the concerns that prompted it to conclude, upon careful deliberation and extensive research, that the Declarations should be stricken. The Complaint, which specifically invoked § 216(b) opt-in collective action procedures, was filed in this District Court on January 9, 2008.[8] Within days, and armed with full knowledge that a putative FLSA collective action was pending, defendant's attorneys descended upon HL-A and secured the Declarations from 245 employees in a transparent effort to seal off any FLSA claims those employees might have before they heard about the lawsuit and their potential rights to participate in it at the opt-in stage. The Declarations were geared specifically to the pay practices alleged in the Complaint, and were obviously designed by HL-A to foreclose the unwitting declarants' potential rights to join the

---

[7] In particular, the Court cannot and will not consider HL-A's attempts to expand the record on this topic by injecting new facts concerning the interview process via footnote 15 of its latest memorandum of law. If HL-A had wished to present these facts, it had a full and fair opportunity to do so in briefing the underlying Motion to Strike. Having elected not to do so then, HL-A cannot predicate a Motion to Reconsider on facts which it failed to place before the Court prior to the December 9 Order. Even if such expansion of the record were proper (which it is not), HL-A has gone about it incorrectly, offering neither declaration nor affidavit nor other evidence to support these newly asserted "facts," but instead providing the bare say-so of counsel in a brief.

[8] HL-A repeatedly belittles the Complaint as a "single-plaintiff FLSA suit," but this is disingenuous. Defendant was fully aware at the time the Declarations were taken that plaintiff's attorney intended to ask this Court to certify an opt-in collective action "comprised of any and all persons employed as hourly employees by Defendant at any time during the three (3) years preceding the filing of this Complaint" and that plaintiff's position was that "the same practices alleged in the [Complaint] comprise violations of the FLSA against other employees." (Doc. 1, ¶¶ 25-26.) As such, this was not a mere run-of-the-mill single-plaintiff wage and hour lawsuit; to the contrary, it was one that from its very inception alerted HL-A that plaintiff intended to request certification of an opt-in class which could potentially encompass hundreds of current and former employees, if the Court authorized and they exercised their rights to opt in.

pending action at some future date. Yet HL-A and its lawyers did not tell the declarants what they were up to. They did not indicate that a putative collective action had been filed challenging the very pay practices about which the declarants were being asked. They did not tell the declarants that by participating in the interview and signing a declaration, they might lose the right to join the pending lawsuit as opt-in plaintiffs. Instead, HL-A and its attorneys misled and manipulated the employees into participation by reassuring them that the company was simply conducting a "survey" of its pay practices.[9] For these reasons, as well as those documented at length in the December 9 Order, the Court remains convinced that HL-A did in

---

[9] For reasons that elude the Court, HL-A continues to cling to the frankly absurd notion that it was merely conducting a "survey" "to ensure that there were no problems of which HL-A was unaware" and to diagnose and correct any deficiencies in its pay practices. (Doc. 65, at 17-18.) According to HL-A, the Declarations were merely intended to "to document what was said in case memories faded over the passage of time." (*Id.* at 18.) Leaving aside HL-A's failure to submit any record evidence (at any time) bolstering this contention and its improper efforts to expand the record by unvarnished representations of counsel in its latest brief, the facts contradict HL-A's stance. Apparently, HL-A would have this Court believe that the extraordinary dispatch of its legal team to the facility to conduct a forced-march marathon of nearly 250 employee interviews over a two-day period was simply a matter of good housekeeping, a routine attempt by an enlightened employer to check up on its human resources practices. HL-A apparently also expects the Court to accept the notion that the timing (immediately after the filing of this § 216(b) action) and the content of those interviews (which exactly meshed with the FLSA violations alleged in this § 216(b) collective action) were purely coincidental and fortuitous. Nonsense. The frantic stampede of declaration-gathering was transparently a calculated attempt to perform damage control as quickly as possible after the Complaint was filed by locking as many putative class members as possible into statements that could be used to defeat § 216(b) certification, to exclude as many employees as possible from eligibility for any opt-in class that might be certified, and to cut off the potential opt-in FLSA claims of as many employees as possible. It was, of course, important to strike immediately, before word of mouth about the lawsuit spread throughout the plant to the point where employees learned of their potential opt-in rights, such that they might no longer blindly cooperate with HL-A in the investigative process. And the proof is in the pudding. In response to plaintiffs' Motion for Conditional Class Certification, HL-A submitted all 245 of these Declarations as an exhibit and relied on same in opposing conditional class certification because the vast majority of declarants stated that they had always been properly paid by HL-A. (*See* doc. 47, at 3, 16-17.) In unrepentantly invoking the charade that the Declarations were the product of an innocuous "survey," rather than a deliberate scheme, before declarants found out what was happening, to erect insurmountable barriers to any future efforts by declarants to opt in to this action, defendant is not being forthright with this Court.

fact engage in misleading and abusive communications that exhibited bad faith.  Defendant's request for reconsideration on this point is not well-taken.[10]

As its fifth and final objection to the December 9 Order, HL-A maintains that the remedy of striking the Declarations from all use in this action is "too severe" because HL-A did not do anything wrong, requested only truthful information, and did not misrepresent anything to its employees. (Doc. 65, at 19-20.)  This argument overlaps heavily with both defendant's arguments on the underlying Motion to Strike and its fourth objection to the December 9 Order, as discussed *supra*.  It neither requires nor warrants independent treatment.  This Court has unambiguously found that HL-A secured the Declarations via misrepresentation, and has explained in inordinate detail in this Order and the December 9 Order the basis for its conclusion that defendant's conduct was egregious and unacceptable, thereby warranting sanctions pursuant to the inherent powers of this Court.  The December 9 Order explained that "[t]hrough misleading communications and nondisclosure of the true reasons for those interviews, Defendant treated putative plaintiffs unfairly and irrevocably tainted the Declarations procured by dint of that deception." (Doc. 63, at 15.)  The Court remains of that opinion today.  The Court further remains of the view that it acted well within its discretion to exclude or strike evidence that was improperly obtained, as explained on pages 14 and 15 of the December 9 Order.  To allow defendant to present the Declarations to the trier of fact would be to reward it for its deception and knowingly to place tainted evidence before the jury.  The Court cannot agree that the sanction imposed was too severe.  The December 9 Order was not manifestly erroneous in

---

[10]   Further, the Court cannot let pass without comment HL-A's mischaracterization of the December 9 Order as endorsing a "cynical suggestion that employees are not likely to be truthful when questioned in non-coercive interviews by employers but are likely to be truthful when told that a suit has been filed which they have the option to join ...." (Doc. 65, at 18.) Defendant does not advance its cause by distorting this Court's words.  Footnote 13 in the December 9 Order emphatically does not state that employees "are not likely to be truthful when questioned in non-coercive interviews."  Instead, it points out that, had employees been told the truth by HL-A as to the reason why they had been called into an interview with the company's lawyers during work hours, asked a bunch of questions and told to sign a statement, they might have done many things differently, including (a) elected not to participate in the interviews; (b) reviewed the "boilerplate" declarations placed in front of them more carefully, knowing that their rights potentially hung in the balance; (c) asked more questions themselves; or (d) done a host of other things to protect themselves and preserve their rights.

imposing that sanction.[11]

### III.  Conclusion.

For all of the foregoing reasons, Defendant's Motion to Reconsider Order Striking Declarations (doc. 64) is **denied**.

DONE and ORDERED this 23rd day of January, 2009.

                        s/ WILLIAM H. STEELE
                        UNITED STATES DISTRICT JUDGE

---

[11] In mitigation of its misconduct, HL-A insists that "Plaintiff has presented no evidence that the declarations are untrue" and that "[i]t is undisputed that HL-A was only seeking truthful information." (Doc. 65, at 20.) Defendant misses the point. The issue here is defendant's use of subterfuge to obtain these Declarations under false pretenses. Had HL-A been honest with employees about its reasons for seeking the Declarations, any number of those Declarations might not exist at all, or at least not in their present form. By misleading its employees into preparing the adverse evidence that it now seeks to use against them, HL-A tainted the Declarations. It is that taint which requires their exclusion. As for HL-A's protestation that it "was only seeking truthful information," if that were so, then why was HL-A not truthful with the declarants about the *raison d'etre* for the interviews in the first place? Over the course of its dozens of pages of briefing, defendant has never satisfactorily answered this question.