IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEBORAH V. LONGCRIER, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION 08-0011-WS-C |
| | ) |
| HL-A CO., INC., | ) |
| | ) |
|     Defendant. | ) |

**ORDER**

    This matter comes before the Court on preliminary review of the parties' Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice (doc. 84).

    The parties are asking this Court to approve their settlement agreements of this FLSA opt-in collective action, which was conditionally certified as a collective action back on December 12, 2008 and which now consists of 4 named plaintiffs and 79 other opt-in plaintiffs. According to their Joint Motion, the basic parameters of the contemplated settlement are as follows: (a) the individual-specific agreements cover all plaintiffs' FLSA and "work and labor" claims through the date of their agreements, as well as plaintiff Longcrier's FMLA claims; (b) the named plaintiffs are releasing all of their claims against HL-A, not just those specifically described herein; (c) each plaintiff will receive one hour of overtime pay for each month of employment at HL-A during the relevant time period, plus an equal amount for liquidated damages; (d) total settlement proceeds to the 79 opt-in plaintiffs will be $37,107.64 (with most plaintiffs receiving a gross amount between $250 and $575), plus an aggregate of $1,275 to named plaintiffs Bell, Clerk and Pettus and some $8,800 to Longcrier (most of which is allocated to her FMLA claim), for a grand total payout of $47,182.64; (e) payment of attorney's fees to plaintiffs' counsel in the amount of $103,000; and (f) retention of jurisdiction by this District Court to enforce the myriad plaintiff-specific settlement agreements.

    As an initial matter, the parties are of course correct that their settlement is subject to and contingent upon judicial approval. After all, "Congress made the FLSA's provisions mandatory;

thus, the provisions are not subject to negotiation or bargaining between employers and employees. ... FLSA rights cannot be abridged by contract or otherwise waived." *Lynn's Food Stores, Inc. v. U.S. By and Through U.S. Dep't of Labor, Employment Standards Admin., Wage and Hour Div.*, 679 F.2d 1350, 1352 (11th Cir. 1982). "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* at 1353 (citation omitted). Subject to the concerns identified below, the amounts payable to plaintiffs appear fair and reasonable, given each plaintiff's acknowledgment in his or her agreement that the settlement funds represent 100% of the back pay to which he or she is entitled under the FLSA.

Judicial scrutiny of FLSA settlements encompasses not only the amounts paid to employees to resolve their FLSA claims, but also the amount of plaintiffs' attorney's fees paid pursuant to those settlements. *See, e.g., Silva v. Miller*, 2009 WL 73164, *2 (11th Cir. Jan. 13, 2009) ("FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement."); *see also Peress v. Wand*, --- F. Supp.2d ----, 2008 WL 5597655, *1 (S.D. Fla. Dec. 17, 2008) ("While a party has a right to attorney's fees incurred in the successful prosecution of his claims under the FLSA, 29 U.S.C. § 216(b), the courts have a corresponding duty to make sure that such an award is reasonable."). The touchstone of judicial scrutiny of a plaintiff's attorney's fee award in an FLSA case is its reasonableness. *See Silva*, 2009 WL 73164, at *2 ("FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions. ... To turn a blind eye to an agreed upon ... fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee."). Indeed, numerous courts have refused to approve or award proposed FLSA attorney's fee amounts that are unreasonable.[1] In scrutinizing the reasonableness of an FLSA attorney's fee

---

[1] *See, e.g., Loughner v. University of Pittsburgh*, 260 F.3d 173, 177-81 (3rd Cir. 2001) (vacating FLSA attorney's fee award that was triple the amount recovered by plaintiff in settlement where district court failed to provide findings of fact and a clear explanation for why the fee was granted); *Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F. Supp.2d 1259, 1263

award, courts have utilized the time-honored lodestar method.[2]

From the foregoing, then, it is abundantly clear that this Court has a duty to review both the fairness of the proposed back-wage payments to resolve plaintiffs' FLSA claims and the reasonableness of the agreed-upon legal fees to be paid to plaintiffs' counsel.  As noted, the settlement amounts to plaintiffs appear fair and reasonable when considered in isolation.  The problem is that the parties have afforded the Court with no factual basis for evaluating the reasonableness of the attorney's fee portion of the settlement.  Although it may be perfectly justifiable, an unexplained arrangement wherein more than two-thirds of the settlement proceeds are paid to plaintiffs' lawyers rather than to plaintiffs themselves raises unanswered questions as to reasonableness.  This is particularly so given that this action settled relatively early in the litigation process, shortly after conditional collective action certification, more than seven months before the close of discovery, and almost a year before trial.  If, as suggested above, the lodestar method is the appropriate technique for assessing reasonableness, then the Court has a duty to examine whether $103,000 in attorney's fees reasonably accrued (multiplying reasonable hours times a reasonable hourly rate) in the lifespan of this action.  The parties are therefore **ordered**, on or before **April 22, 2009**, to file a supplemental evidentiary submission detailing the factual and legal basis for their contention that the $103,000 proposed attorney's fee award for plaintiffs' counsel is reasonable and appropriate.

---

(M.D. Fla. 2008) (opining that having a 40% contingency fee taken out of plaintiffs' FLSA settlement as an attorney's fee "would contravene the intent" of § 216(b)); *Goss v. Killian Oaks House of Learning*, 248 F. Supp.2d 1162, 1168 (S.D. Fla. 2003) (noting in the FLSA context that "an entitlement to attorney's fees cannot be a *carte blanche* license for Plaintiffs to outrageously and in bad faith run up attorney fees," and denying $16,000 attorney's fee request where plaintiff's FLSA claim was for just $316).

[2]   *See, e.g., Peress*, 2008 WL 5597655 at *1-2; *James v. Wash Depot Holdings, Inc.*, 489 F. Supp.2d 1341, 1346-47 (S.D. Fla. 2007); *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003) (calculation of reasonable attorney's fee in FLSA case requires application of lodestar method); *Small v. Richard Wolf Medical Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) ("To determine fees under the FLSA, the district court will generally follow the 'lodestar' approach, multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation."); *Loughner*, 260 F.3d at 177 (in § 216(b) context, "we use the lodestar formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate").

Also of concern is the portion of the parties' Joint Motion asking this Court to retain jurisdiction over the enforcement and administration of as many as 80+ settlement agreements between HL-A and individual plaintiffs herein.  This Court has long had a practice of <u>not</u> retaining jurisdiction over settled cases except where extraordinary or unusual circumstances may warrant continued judicial entanglement.  This practice stems from prudential considerations of judicial economy and efficiency, as well as deference to the circumscribed nature of federal jurisdiction.  A federal court has no inherent power to enforce a settlement agreement simply because it was reached in connection with a lawsuit in the federal forum.  Rather, there must be either "some independent basis for federal jurisdiction," or the Court must possess ancillary jurisdiction because "the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal."  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 380-82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).  As the *Kokkonen* Court explained, enforcement of a settlement agreement "is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."  *Id.* at 378.  For that reason, the Court typically applies the bright-line rule that "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction."  *Id.* at 382.[3]  In light of these concerns, the parties are **ordered**, on or before **April 22, 2009**, to file a supplemental notice setting forth any extraordinary factual or legal circumstances that they contend warrant this Court deviating from its usual practice and retaining jurisdiction over the enforcement of dozens of individual-specific settlement agreements and releases herein.

DONE and ORDERED this 8th day of April, 2009.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE

---

[3] To be sure, "the parties' compliance with the terms of the settlement contract (or the court's 'retention of jurisdiction' over the settlement contract) may, ***in the court's discretion***, be one of the terms set forth in the [dismissal] order."  *Id.* at 381 (emphasis added).  Thus, this Court "is authorized to embody the settlement contract in its dismissal order ... if the parties agree."  *Id.* at 381-82.  The Court recognizes that it <u>can</u> retain jurisdiction, but harbors significant reservations as to whether it <u>should</u> in this case.